IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE MOSS, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KLOVER HOLDINGS, Inc., <br><br> Defendant. | Civil Action No. 1:25-cv-05758 <br><br> Hon. Judge Joan B. Gottschall |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**I.  INTRODUCTION**

Plaintiff Staff Sergeant Moss has no claim against Klover Holdings Inc. ("Klover") under either the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, ("TILA") or the Military Lending Act, 10 U.S.C § 987, *et seq.*, ("MLA").  To state a claim under either TILA or MLA, Plaintiff must plausibly allege that Klover offers "credit" that is subject to "finance charges," as those terms are defined for purposes of MLA and TILA.  The Complaint does neither.  Non-recourse advances like those that Klover offers through its cash advance service, Balance Boost,[1] are not "credit" as a matter of law.  And Plaintiff's own transaction history shows that the alleged fees are not "finance charges," because the fees are not a condition of or incident to the advance of credit: Plaintiff sometimes paid these fees, but more often he did not.  Plaintiff received Balance Boost advances regardless.  The Complaint should be dismissed pursuant to Fed. R. Civ P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim for which relief may be granted.

---

[1] The Complaint refers to the service as "Cash Advance"; the name has varied over time.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

Klover offers personal financial management services. *See* Baker Decl., Ex. 1 at 1. This includes a budgeting feature, tracking income and expenses to let users know about upcoming bills, and rewards programs. *Id*. at 3. Klover also offers a Balance Boost service based on users' anticipated income. *Id*. at 4. Users may request to receive a Balance Boost of up to $100. *Id*.[2] Klover does not charge additional fees for Balance Boosts, but users may choose to pay a fee to expedite delivery of the Balance Boost. *Id*. Balance Boosts are non-recourse. Klover has "no legal or contractual claim" based on its inability to charge a user for the Balance Boosts. *Id*. at 5.

Klover users agree to Klover's Terms of Service ("TOS") when they sign up.

 

| Notice of Terms of Service, Baker Decl., Ex. 2 | Notice of Terms of Service, Baker Decl., Ex. 2 |

---

[2] The Balance Boost limit has varied over time.

2

The TOS governs users' relationship with Klover. Baker Decl., Ex. 1 at 1. The TOS states in relevant part:

> Klover warrants that it has no legal or contractual claim against you based on our inability to charge you for Balance Boost funds, but Klover may suspend your access to the Services until we are able to charge your Bank Account or debit card for a Balance Boost in full. With respect to a failure to receive the amount for a Balance Boost in full, Klover warrants it will not engage in any debt collection activities, place any amount we are unable to charge with or sell it to a third party, or report you to a consumer reporting agency. Klover does not waive any rights regarding fraudulent activity and will pursue instances of fraud.

Baker Decl., Ex. 1 at 5.

Plaintiff, who alleges that he is an active-duty service member, Compl. ¶ 96, claims to have received Balance Boosts in 2023.[3] Compl. ¶ 101. On April 18, 2025, Plaintiff filed a complaint against Klover in the Circuit Court of Cook County Illinois, Chancery Division, alleging violations of MLA and TILA, seeking to represent a class of individuals for each claim, and to bring suit on behalf of the general public. *See* Compl. ¶ 108–116. On May 22, 2025, Klover timely removed the action to this Court. *See* ECF No. 1.

### III. LEGAL STANDARD

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The court is not required to accept conclusory allegations or

---

[3] Plaintiff does not allege when he signed up with Klover, or when he started taking Balance Boosts. Klover's records of Plaintiff's signup and transactions, which are incorporated by reference in the Complaint, indicate that Plaintiff signed up in July 2021. *See* Baker Decl, Ex. 3. *See also* Section III, *infra*.

3

unreasonable inferences as true. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). Furthermore, the allegations must give fair notice to enable the opposing party to defend itself effectively. *Twombly*, 550 U.S. at 555.

Under the incorporation by reference doctrine, "if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The document in question must be referred to in the complaint and be central to the plaintiff's claim. *Id*. (citing *Wright v. Assoc. Inc. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). The Court may also take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Courts may incorporate by reference terms of service where they are referenced in the complaint and are the basis of the claims. *Hogan v. Amazon.com, Inc.*, No. 21 C 3169, 2022 U.S. Dist. LEXIS 58347, at *7 (N.D. Ill. Mar. 30, 2022) (incorporating by reference where terms are quoted in the Complaint and are central to Plaintiffs' claims). Courts may also take judicial notice of terms of service. *Fitzpatrick v. Lens.com, Inc.*, No. 24 CV 2700, 2024 U.S. Dist. LEXIS 192591, at *2 n.1 (N.D. Ill. Oct. 23, 2024) (taking judicial notice of Terms and Conditions hyperlinked on the website). Because the Complaint makes numerous references to what Plaintiff refers to as Klover's "credit agreement" (the TOS), *see, e.g*., Compl. ¶¶ 105, 106, the TOS may be incorporated by reference. Similarly, because the Complaint refers to and makes allegations regarding Klover's sign up mechanism and disclosures, *see, e.g*., Compl. ¶ 66, 114, Klover's sign up screen may also be incorporated by reference. *Gardener v. MeTV*, 681 F. Supp. 3d 864, 867

4

n.2 (N.D. Ill. 2023) (incorporating by reference, or in the alternative taking judicial notice of, defendant's website where the claims were based on what disclosures were made when viewing content in the website); *see also Fitzpatrick*, 2024 U.S. Dist. LEXIS 192591, at *2 n.1 (taking judicial notice of website screens with the Terms of Use hyperlinked). Lastly, because the Complaint refers to and relies on the Plaintiff's transaction history, Compl. ¶ 101, Plaintiff's transaction history may be incorporated by reference. *See Brownmark Films*, 682 F.3d at 690.

The Court may therefore consider Exhibits 1–3 to the Baker Declaration with this Motion to Dismiss.

## IV. THE COURT SHOULD DISMISS ALL CLAIMS UNDER RULE 12(B)(6).

The Court should dismiss the Complaint for failure to state a claim under Rule 12(b)(6) because Klover does not offer credit subject to finance charges under either TILA or MLA.[4]

### A. Plaintiff Has Not Adequately Alleged That Klover Offers "Credit" Subject to a "Finance Charge."

MLA does not apply to all cash advances or even to all extensions of consumer-purpose credit. To state a claim under MLA (or TILA), Plaintiff must adequately allege that the Balance Boost transactions at issue constitute "credit" *and* the "credit" must be subject to a "finance charge." *See* 32 C.F.R. § 232.3(f)(1) (defining "consumer credit" under MLA); 12 § C.F.R. §

---

[4] Klover does not waive, and expressly reserves, its right to move to compel arbitration in the future under the applicable terms of Klover's TOS. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) ("A party does not waive its right to arbitrate a dispute by filing a motion to dismiss . . . ."); *Burke v. Amedisys, Inc.*, No. 17-cv-9232, 2023 U.S. Dist. LEXIS 61167, at *3 (N.D. Ill. Jan. 11, 2023) ("Filing a motion to dismiss is not enough for a finding of waiver. The Seventh Circuit has made that point over and over again.").

1026.2(a)(17)(i) (defining "creditor" under TILA, in relevant part). Plaintiff has not done so, and thus Plaintiff cannot meet its Rule 12(b)(6) pleading obligations.

### 1. Klover Does Not Extend "Credit" as a Matter of Law Because Balance Boost Users Have No Repayment Obligation.

MLA protects "covered borrowers," which are defined as consumers that "become[] *obligated* on a consumer credit transaction." 32 C.F.R. § 232.3(g)(1)(emphasis added). MLA in turn defines credit as "the right granted to a consumer by a creditor to defer payment of debt or to incur debt and defer its payment." 32 C.F.R. § 232.3(h).[5] Without debt, MLA does not apply.

Debt is an *obligation* to pay some amount to a creditor. In ordinary usage, "debt" means "something owed" or "a state of being under obligation to pay or repay. . . ." Legal dictionaries define the term, for example, as a "financial liability or obligation owed by one person, the debtor, to another, the creditor."[6] The Fair Debt Collection Practices Act similarly defines debt as "any obligation or alleged obligation of a consumer to pay money . . . whether or not such obligation has been reduced to judgment." *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) (construing the term "debt" under TILA consistent with its definition in the Fair Debt Collection Practices Act).[7]

Plaintiff has not demonstrated that Balance Boosts are debt—and that's because Balance Boosts are not debt. Under the TOS governing Balance Boost transactions, "Klover warrants that

---

[5] TILA's definition of credit is essentially the same. *See* 12 C.F.R. § 1026.2(a)(14).
[6] *Debt*, Merriam-Webster, https://www.merriam-webster.com/dictionary/debt (last updated Apr. 20, 2025); *Debt*, Wex, https://www.law.cornell.edu/wex/debt (last updated Sept. 2021); 15 U.S.C. 1692a(5); *see also Debt,* Black's Legal Dictionary (12th ed. 2024) (debt means "[l]iability on a claim; a specific sum of money due by agreement or otherwise").
[7] Notably, so do interpretations of the term by Illinois courts when presented with the term in Illinois statutes. *See, e.g.*, *People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 57 (1991) ("A 'debt' is defined in general terms as a specified sum of money owed by one person to another, including the obligation of the debtor to pay, and the right of the creditor to enforce payment.") (quoting Black's Law Dictionary 363 (5th ed. 1979)).

6

it has no legal or contractual claim against you based on our inability to charge you for Balance Boost funds." Baker Decl., Ex. 1 at 5. Regulation Z, which implements TILA, and from which MLA draws certain definitions, including "closed-end credit," 32 C.F.R. § 232.3(d), underscores the point. Regulation Z requires that disclosures reflect the "terms of the *legal obligation* between the parties." 12 C.F.R. § 226.5(c) (emphasis added). "The legal obligation normally is presumed to be contained in the contract that evidences the agreement. But this may be rebutted if another agreement between the parties legally modifies that contract." 12 C.F.R. pt. 1026, Supp. I ¶ 5(c)-1.iii. Here, Plaintiff does not allege the existence of a legal obligation to repay arising from the contract that governs the Balance Boost (the TOS) or in any other operative agreement between users and Klover. *See Harmon v. Fifth Third Bancorp*, Case No.: 1:18-cv-00402, U.S. Dist. LEXIS 85771, at *22–23 (S.D. Ohio May 15, 2020) (holding where a consumer "has no liability . . . for losses associated with [an advance]," such advance is not "credit" within the meaning of TILA, which is analogous in this instance with MLA).[8] Similarly, MLA (and TILA) only applies to "consummated" transactions. 32 C.F.R. § 232.13(a). For these purposes, consummation means "the time that a consumer becomes *contractually obligated* on a credit transaction." 12 C.F.R. § 226.2(a)(13) (emphasis added); *see also* 32 CFR 232.3(s) ("words that are not defined in this part, [of which consumption is one,] have the same meaning given to them in Regulation Z.").[9] Plaintiff makes no allegations that he was contractually obligated to a credit transaction with Klover, and the TOS makes clear there is no legal or contractual obligation for Plaintiff (or the putative class members) to repay Balance Boosts. MLA does not apply.

---

[8] Because TILA is a disclosure statute, *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)), if there is no *legal obligation* to repay, there is nothing to disclose, and thus no violation of TILA.
[9] TILA includes similar language requiring disclosures "before consummation." 12 C.F.R. § 1026.17(b).

The Complaint attempts, unsuccessfully, to overcome this fatal flaw by alleging that Klover receives users' temporary authorization to debit a bank account or other account, and that earned wage access ("EWA") users in general have a high rate of repayment. *See* Compl. ¶¶ 37, 87, 95 n. 37. These factors are insufficient as a matter of law to convert a non-recourse advance into "debt." If the advance of funds and expectation of repayment were sufficient to constitute debt, then investment contracts would be considered debt, and they are not. *See Foster v. EquityKey Real Estate Invs. L.P.*, No. 17-cv-00067-HRL, 2017 U.S. Dist. LEXIS 70958, at *15 (N.D. Cal. May 9, 2017) (transaction was not a loan (debt), despite likelihood of repayment, where putative lender advanced funds in exchange for a right that would, in all likelihood, have entitled the lender to receive the amount provided—and more—based on housing value appreciation); *Bergersen v. Comm'r of Internal Revenue*, 109 F.3d 56, 60 (1st Cir. 1997) (determining payments were more akin to dividends than loans where "the Bergersens knew that there was no effective corporate constraint to induce repayment, nor . . . any meaningful tax consequences from a permanent failure to repay."). Klover advances funds pursuant to a contract and hopes for repayment. But Balance Boost users have no obligation to repay, with the only consequence of not repaying being that the user is not able to take out a subsequent Balance Boost.

The existence of a debit authorization is likewise insufficient as a matter of law to constitute a repayment obligation. Charitable campaigns, for example, often obtain pledges for monthly donations and a corresponding authorization to debit the donor's account. The charity may reasonably expect such donations to occur as authorized. But donors typically do not become indebted or contractually obligated to make donations. The authorization Klover obtains is no more evidence of an obligation by Balance Boost users to repay advances than a charity's authorization is evidence of an obligation of a donor to donate. Likewise, TILA recognizes that a

8

consumer may choose to prepay a mortgage or student loan in full by authorizing a lender to debit her account or by establishing other voluntary means of repayment (e.g. via payroll), but that the authorization alone does not modify her obligation to repay the loan as agreed by the contract. *See* 12 C.F.R. pt. 1026, Supp. I ¶ 17(c)(1)-2.ii (instructing creditors to disregard voluntary payments for determining the "legal obligation" relevant for disclosure).

While courts do at times recharacterize sales transactions as loans (debt) in the absence of contractual obligations, they do so only where the recipient is effectively coerced into repaying to redeem an ownership right in property whose fair market value is equal to, or higher than, the amount to be repaid. *See, e.g.*, *Burnett v. Ala Moana Pawn Shop,* 3 F.3d 1261, 1262 (9th Cir. 1993) (finding a pawn transaction was a loan and not a sale where the amount advanced was far less than the pawn's fair market value and thus the transaction was based on the consumer's need for cash and not the value of the pawn). Pawn transactions or sale-and-repurchase or sale-and-leaseback transactions are effectively transactions in which the creditor's ownership right or interest in property is their "recourse" for non-payment, since the result of non-payment is that the creditor is made or remains whole. Plaintiff makes no such allegations here, nor could he. Nor does Plaintiff allege that Balance Boosts involve the sale of any consumer property (sham or otherwise), or that Klover strongarms consumers into repayment by withholding some item of value from them. In fact, the only consequence to users of failing to repay a Balance Boost is that the user may be suspended from Klover, or that the user may not be able to take additional advances. Baker Decl., Ex. 1 at 5.[10]

---

[10] Regulatory references to "deferred presentment transactions" cannot save Plaintiff's deficient claims. *See, e.g.*, 32 C.F.R. § 232.8(a); 12 C.F.R. pt. 1026, Supp. I ¶ 2(a)(14). At base, deferred presentment transactions involve "credit." *See id.*; *see also Truth in Lending*, 65 Fed. Reg. 17129 (Mar. 31, 2000) (describing the consumer "repaying the ***obligation***" in connection with deferred presentment transactions) (emphasis added). Cash Advances do not meet the regulatory definition of credit, and thus are not deferred presentment transactions. *See, supra*, p. 6–7.

Plaintiff's only remaining argument, then, is that examining the "nature" or "substance" of the transaction reveals an "obligation to repay," notwithstanding the written agreement between the parties to the contrary (and further arguing that such an inquiry is appropriate under MLA). Plaintiff's burden is to allege that the true nature of the transaction is one in which users are "obligated" on a debt. But the Complaint does not dispute that Plaintiff could have avoided repayment simply by notifying Klover of his intention to revoke his debit authorization, or, for example, by closing his bank account. Nor does the Complaint allege that Klover ignored revocations of debit authorizations. Klover's inability to enforce the putative repayment obligation, due to the user's right to freely revoke the debit authorization and Klover's disavowal of recourse, is determinative: Plaintiff has demonstrated no repayment "obligation" and therefore no "credit." Where a "creditor" has no right to enforce a putative debt, there is no loan. "It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) (citing to William Blackstone, *Commentaries on the Laws of England*).

The Complaint does not adequately allege that Balance Boosts are debt or that Balance Boost users become contractually obligated to repay these non-recourse advances. Without debt, Plaintiff and the putative classes have no claims.

### 2. The Complaint Does Not Adequately Allege That the Purported "Credit" Is Subject to "Finance Charges."

Even if Plaintiff could show that Balance Boosts constitute "credit" under the relevant statutes, Plaintiff must still adequately plead that Balance Boosts are (1) payable "by a written agreement in more than four installments" or (2) subject to "finance charges." *See* 32 C.F.R. §§ 232.2(a)(1), 232.3(f)(1). Plaintiff cannot. Balance Boosts are repaid—if at all—in a single

installment, not "in more than four installments," nor does the Complaint allege otherwise. That leaves "finance charges." But Plaintiff has not adequately alleged that Balance Boosts are subject to "finance charges," as that term is defined in MLA by incorporating TILA's definition promulgated in Regulation Z. 32 C.F.R. § 232.3(n).

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 1026.4(a).

Plaintiff alleges that he paid finance charges in the form of tips and fees for expedited delivery of Balance Boosts.[11] Compl. ¶ 100. Neither Klover's optional tips nor optional expedited delivery charges constitute finance charges.

The Board of Governors for the Federal Reserve ("the Board"), which at the time had rulemaking and enforcement authority over TILA,[12] determined that "most voluntary fees" are not finance charges "under the statutory exclusion for charges that are payable in a comparable cash transaction."[13] That makes sense. Tips are a regular part of non-credit transactions, such as charitable and political donations.[14] Comparable expedite fees are likewise frequently

---

[11] Klover's Expedited Delivery fee has had different names over time, including "Boost Transport Charge."
[12] *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the [Truth in Lending] Act or Regulation [Z] should be dispositive for several reasons.").
[13] *See Truth in Lending*; 61 Fed. Reg. 49237, 49239 (Sept. 19, 1996). Because "finance charge" is defined in MLA in reference to the TILA definition provided under Regulation Z, *see* 32 C.F.R. § 232.3(n), including interpretations issued by an official or duly authorized employee, *see id.* § 232.3(s), the Board's ruling-making likewise applies here.
[14] *See, e.g.*, ActBlue, *What are ActBlue tips for?,* https://help.actblue.com/hc/en-us/articles/16869089253399-What-are-ActBlue-tips-for (last visited June 10, 2025); DonorsChoose, *What is the suggested donation to DonorsChoose?,* https://help.donorschoose.org/hc/en-us/articles/202002613-What-is-the-suggested-donation-to-DonorsChoose (last visited June 29, 2025).

11

charged for non-credit products. For example, banks frequently charge fees to expedite settlement of check deposits. And virtually all digital wallets offer expedited withdrawals for additional fees.[15] Other analogous expedite and convenience fees include out-of-network ATM fees and bank and credit union fees (such as expedited electronic payment fees or convenience fees for making loan payments by phone). These fees are not finance charges under TILA or MLA. Indeed, the Consumer Financial Protection Bureau ("CFPB") acknowledged that expedite fees are "approximately commensurate with the prevailing expedited transfer fees for non-credit products currently charged to consumers in the market," which, in part, justified the CFPB's determination that "this fee does not bear hallmarks of fees levied alongside an extension of credit."[16] Because tips and expedite fees are charged in numerous comparable non-credit transactions, they are excluded as a matter of law from the definition of finance charge under TILA, and in turn, MLA. Thus, a member's choice to pay an optional tip or pay for expedited delivery does not demonstrate that Defendant assessed finance charges.

Plaintiff's claims fail for another, independent reason: optional tips and optional expedited delivery charges are neither a "condition of" nor "incident to" Balance Boost advances. 12 C.F.R. § 1026.4(a). Plaintiff's own transaction history demonstrates that he received Balance Boosts without leaving a tip, without paying for expedited delivery, and sometimes without doing either. *See* Baker Decl., Ex. 3.[17] That's consistent with the Complaint itself, which shows that such charges are not a "condition of" a Balance Boost. Plaintiffs allege that tips and expedite

---

[15] *See, e.g.*, Venmo, *Standard Bank Transfers FAQ*, https://help.venmo.com/hc/en-us/articles/235399967-Standard-Bank-Transfers-FAQ (last visited June 29, 2025) (describing expedited transfer fees).
[16] *See* CFPB, *Payactiv Approval Order,* at 5 (Dec. 30, 2020), https://files.consumerfinance.gov/f/documents/cfpb_payactiv_approval-order_2020-12.pdf terminated on other grounds by CFPB, *Order to Terminate Sandbox Approval Order* (June 30, 2022), https://files.consumerfinance.gov/f/documents/cfpb_payactiv_termination-order_2022-06.pdf.
[17] In Baker Declaration, Exhibit 3, "boosttransportcharge" is the expedite fee and "donationamount" is the tip.

12

fees are "almost as certain as required fees." Compl. ¶ 51 (citations omitted). But even the Complaint acknowledges that this conclusory allegation is not true. *See, e.g.*, Compl. ¶ 46 ("users can use an EWA product without paying [expedite fees or tips]") and ¶ 47 n. 20 ("[o]ne recent survey found 79% of EWA users typically paid expedite fees"). And even if it were true that tips and expedite fees were "almost as certain as required fees," which Plaintiff's transaction history demonstrates is not the case, it is a far cry from the required showing that these optional fees are a condition of users receiving Balance Boost advances. Where users can and do receive Balance Boost advances without paying a tip or paying an expedited delivery charge, those fees cannot, as a matter of law, be a condition of the advance.

The Board considered whether similar fees to make expedited repayments and to expedite delivery of a credit card were "incident to" credit, and determined that they were not, thus concluding that analogous expedite fees were not finance charges. *See* 12 C.F.R. pt. 1026, Supp. I ¶¶ 6(a)(2)-2(ix)-(x). The Board reasoned that because consumers had free alternatives, as Klover members do, such fees were not "incidental to the extension of credit." *See* Proposed Rule, 67 Fed. Reg. 72518, 72619 (Dec. 6, 2002); Final Rule, 68 Fed. Reg. 16185, 16187 (Apr. 3, 2003). A federal appeals court reached the same conclusion when evaluating a similar expedite fee. In *Veale v. Citibank, F.S.B.*, the Eleventh Circuit held that avoidable mailing fees to expedite the mailing of documents and disbursement of a loan refinancing, which ultimately affected the total amount of interest the borrowers would need to pay, were not a finance charge because they were not incident to the extension of credit. 85 F.3d 577, 579 (11th Cir. 1996) ("Since the Veales could have chosen not to pay the Federal Express fee and the bank did not require it, then the fee was not imposed as an incident to the extension of credit and need not be included in the Finance Charge. . . . [T]he charge here was not incidental to the extension of

13

credit."). The same logic extends to tips—consumers can choose not to pay tips, and therefore those fees are not incident to the extension of credit. Regulators were aware of *Veale* when they promulgated Regulation Z and yet did not seek to modify its holding via rulemaking or otherwise. *See* Regulation Z; *Truth in Lending*, 75 Fed. Reg. 58539, 58627, n. 77 (Sept. 24, 2010) (citing *Veale* favorably for a different holding).

Plaintiff has failed to state a claim under MLA or TILA because Plaintiff has not adequately alleged that Klover provides "credit" under either statute or that such "credit" is subject to "finance charges." The Complaint should be dismissed for failure to state a viable claim under Rule 12(b)(6).

## V. CONCLUSION

The Complaint does not sufficiently allege that Balance Boosts constitute "credit" subject to a "finance charge." Plaintiff's MLA and TILA claims therefore should be dismissed under Rule 12(b)(6).

DATED: June 30, 2025

Respectfully submitted,

/s/ *Margaret DePoy*
Margaret DePoy
PAUL HASTINGS LLP
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

*Counsel for Klover Holdings, Inc.*

Allyson Baker (*pro hac vice*)
Meredith Boylan (*pro hac vice*)
Sameer Sheikh (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street
Washington, D.C. 20036

            Telephone: (202) 551-1700
            Facsimile: (202) 551-0331
            allysonbaker@paulhastings.com
            meredithboylan@paulhastings.com
            sameersheikh@paulhastings.com